I was going to point out, it wasn't... Steve, would you introduce yourself for the record, please? Sure. I am John Henry Brown, attorney at law. I represent Mr. Fryberg in this matter. And I was just going to note, I happen to be the trial attorney in the case that you just heard about. And it wasn't potato chips. It was Doritos. And there were Doritos in the bag, actually. But in any event, I just thought I'd add that. Mr. Fryberg, this case, I'm sure, doesn't need much of an introduction. It was a nationally known case because... Counsel, let me... Not to any of us until we pick up the papers. Let me ask you one question that I have about the civil order of protection issue. Sure. And the Second Amendment claim. It's my understanding from the argument that the specific item that you're contesting is the duration of the protection order as indefinite. In other words... As what? Indefinite in length. That's one issue. So as I understand it, that is the crux of the problem, in your view, of the Second Amendment issue. That is that it's potentially lifetime. And my question to you is this. Did Mr. Fryberg ever go back to the court that issued the protection order to have the order revised or lifted? My memory is he did not. And is that an available remedy? I have a further answer that might help. Go ahead. Well, let me ask my questions, and then you can explain. Because is that an available procedure to follow in order to reduce the length of a protection order? First of all, we're dealing with tribal courts here, and they're not as efficient. And I don't mean that in any judgmental way as some of the other courts that we're dealing with, first of all. Secondly, it was an interesting issue in this case. What you're talking about, I believe, is the subject of the protection order was Mr. Fryberg's son, who ultimately committed the offense at the high school. So the question really, when that son turns 18, is there still a protection order? Mr. Fryberg can't, who was the designated tribal leader of the tribe to teach young men how to shoot and women. Wasn't the wife also protected under the protective order? Sorry? Wasn't the wife also protected under the protective order? I have that in front of me. I don't have the answer right now, but I can certainly get to that point in a moment. In 2012, the government says that in 2012, he went back to the court because he had violated the protective order. That's correct. Is that correct? That is correct. And we'll get to that colloquy in a minute, too. But I still believe that the essence and part of the prejudice and the failure of the trial court to do any analysis under more prejudicial and probative in this matter. I would separate two questions here because I think Judge Graber was asking you first about a Second Amendment argument and whether or not you had difficulty making that argument of having tried to modify the injunction. If you're now addressing a different point, which is whether the return of service should have been admitted into evidence, because that's what showed that he knew of the hearing. Yes. Let me ask you on that. It seems to me you're making two arguments. One is that this is not a public record. Are you making that argument? Yes. For visibility under the evidence rules, yes. Right. And the second one is even if it is, it's not a sufficient reliable – there's not sufficient indicia of reliability and trustworthiness. That's correct. As to the second one, don't we review the district judge's determination for abuse of discretion? We can tell whether something's a public record from the nature of the evidence, and that's a legal determination. But as to the – as to your major argument, which is you can't trust this because the guy was the brother-in-law of the wife, don't we have to review that for abuse of discretion? I think Justice Scalia, may he rest in peace, would disagree with that strongly. Well – Because under Crawford, I believe, it's a confrontation issue. So – No, no. I'm asking now just about the evidentiary issue. We'll get to that. I want to get to the confrontation issue in a second. You make an objection that shouldn't have been admitted because it was hearsay. Correct. And you say it's not a public record, but even if it is, it's not sufficiently reliable given who served it. Is that a fair summary of what you argue? Yes, sir. Okay. So as to the second part, I'm really focusing on just one part of it now. As to the question of whether or not there are sufficient indicia of reliability and trustworthiness, as the rule requires, don't we have to defer to the judge? To the trial judge's determination that there were. He heard the evidence. He made a determination. Actually, somebody came in and testified that it was important to the family that it be served. As to that, not the confrontation clause issue, which is legal, don't we defer to the trial court judge's determination? No. I do not believe that this Court has to review that solely for abuse of discretion. However, I believe that discretion was abused on that matter. So that's my answer. Why? Why? Is the only reasonable inference that it was served by — it was purportedly served by a family member, that he dumped it in the trash and didn't serve it? It strikes me that an equally reasonable inference, and maybe even a more reasonable inference, is that it would be a big deal to serve it because he was trying to protect his family. Well, that wasn't an argument that the government made, and certainly wasn't anything the judge said. But your argument was, we can't trust the service here because it was made by an in-law, if you will. It was purportedly made by an in-law. It's one of my arguments. And I'm not sure why the — and somebody testified, well, no, it was important that it be served. And other family members said, I remember at the time, we really wanted it served because we wanted her protected. Isn't that enough from which the judge can make a determination of trustworthiness? I don't think so. I don't think that the fact that an admittedly interested party says — the exact words I remember — Yeah, but interested party is — It's hard for me to answer their questions if I can't. I suspect it's a terrific trial argument. But on appeal, we don't care whether the party was interested. We just care whether there was any evidence from which a finder of fact could make the determination. If you're looking at abuse of discretion issue, the fact that there was actually testimony in this trial that — I remember the exact words. This is the most important thing in our family right now. It's not the most important thing in the police department that contains 37 other officers who could have done this service. Doesn't that make it much more likely that service occurred? If it was really, really, really important to the family that this protection order take effect or occur, then wouldn't that suggest that the family member definitely would have wanted to do it? No. I think it would suggest that somebody other than a family member is the person that should do it. That's a different question. We're asked to look at what actually occurred and draw permissible inferences from what did occur, not what would have been better departmental policy. That's not before us. But if someone says this — getting a protection order was super important to us, and I was responsible for making that happen, doesn't that make it much more likely that it happened? As a matter of fact, I think the exact opposite is true. Good. Because that's the reason. That's where we jump into the whole Crawford thing, and I know you don't want to hear that. No, I want to hear you right away on that. Before you get to that question, could we just go back to — May I get some water? I'm taking an antihistamine. Yes, go for it.  Thank you. Thank you, Mr. Miyake. Thank you. Go ahead. I'd like to get back to Judge Graber's prior question about whether the remedy was available to go to the tribal court and have the domestic violence protective order lifted and whether that was an option in this case, given that he was charged with violating it in 2012. So could you answer that question first, and then we can get to Crawford? Certainly. He was never advised that he could come back into court and amend that order at any time. As a matter of fact, that order, which is a boilerplate order, which is amazing to me, that we're talking about a core constitutional right, whether we agree with it or not politically, Second Amendment right, can be subject to a boilerplate order that says if this box isn't checked, then that means this is for life. It does not say anywhere in there you can come back at any time and amend that. But could he have come back to amend it? You're saying he could have. I'm not that familiar with tribal courts. You don't have the answer to that. No. Okay. Thank you. Isn't one of the problems on that that this issue wasn't really raised below? Which issue? Well, the Second Amendment issue. Oh, okay. Yeah, and therefore you didn't – there isn't any record to respond to. Right. Judge Acuda's question or Judge Graber's question. You're doing your best to tell us what you know, but had this been raised at the trial court, presumably we would have had some record on which to base these surmises. I believe, and my notes are not very important, I guess, but the Ninth Circuit has not decided that issue as to whether – No, it's – let me just say, speaking only for myself, I think if properly raised, it would be a serious issue. One of my concerns is it wasn't raised, and so we don't have a lot of things. A lot of the questions we're asking are ones we're asking that are not in the record. The D.C. Circuit case that we've cited in our brief, which I can give you the name of in a minute if you'd like, basically says when you're dealing with a core constitutional issue like the Second Amendment, then you have to do – you can raise that at any time. Any time. And I think that's what we are talking about. It's like somebody forgot about it. In this circuit, I'm aware only of the idea that a jurisdictional issue may be raised at any time, but other issues, if not raised, even constitutional issues, we review only for plain error when they are not raised in the district court. I think that's correct, and I think this is plain error. Let me – I want to let you give you a chance to get your Crawford argument. I'm not sure how much time I can reserve if I'm looking at the clock. And if you want to reserve, that's fine. But I have – let me just ask you the question on Crawford. You keep – you invoke Justice Scalia, and my question is, would Justice Scalia think that this document was testimonial hearsay? Was it prepared to be used in this trial? Oh, I'm certain he would, particularly after some of the whittling away of Crawford in his dissents. You're asking me about Justice Scalia? Well, I mean, I guess I'm really asking whether the Supreme Court would view this return of service as testimonial hearsay, because testimonial hearsay must be hearsay prepared with anticipation of use in the proceeding. And I can't imagine that this was prepared in anticipation of use of a later Federal firearms prosecution. I'm not sure that would be the analysis. Would it have been prepared in order for – to be part of a criminal proceeding? Yes. And the whole question is, is this a criminal proceeding or is this a civil proceeding? The protection order issue, okay? The protection order. So it goes down a rabbit hole. Excuse me. Is the protection order hearing a civil proceeding or a criminal proceeding? I thought it was not – there was no proof beyond a reasonable doubt that it was a civil hearing. That's a really good question, because the documents which I've cited in my brief and I was going to get to indicate that this is a civil matter, but if you don't come to court, I'm going to send you to jail. It says that on the top of the hearsay document that is at issue in this case, Exhibit No. 3. At the top of that, it says in bold letters, if you do not comply with this order and show up, you will go to jail. That has to do with noncompliance. That doesn't have to do with the proceeding at which the order is entered. It's an injunctive proceeding, is it not? No, I disagree with you. So a protection order procedure is not a procedure to enter an injunction, in your view? For what? I'm sorry. Is a proceeding considering whether to enter a domestic violence protection order a proceeding involving the issuance or not of an injunction, a civil injunction? I believe in the context of this case, in tribal court, the answer is no. It's criminal. In big, bold letters it says, if you don't appear, I'm going to put you in jail. So it was the document itself, the service document itself, which is the basis. What criminal sanction was imposed on your client? Boy. That normally follows a criminal trial. You're found guilty and they do something to you. What did they do to him? From my opinion as a father, the criminal sanction was you couldn't see your son or come within 100 feet of him, which, of course, raises all kinds of other prejudicial issues in this case that I've addressed in the briefs but haven't been able to address yet here. We'll give you ñ your time is just about expired, but we'll give you a minute for rebuttal when the time comes and we'll hear from Mr. Miyake at this time. Okay. I haven't even gotten past page one, but that's fine. That's often the case when we have a lot of questions. This is not my first rodeo. Thank you. Good morning, Your Honors. May it please the Court, my name is Bruce Miyake on behalf of the government. I would like to address one of the second amendment issue as Your Honor raised. Because this wasn't raised at the lower court, it is a plain error standard which applies. And because this error was not plain, in other words, there has been no Supreme Court or district court case that has ruled on this or settled this. We may have some dispute about whether or not a permanent order is constitutional or not, but there has been no cases or decisions on that. Let me ask it slightly differently. Sure. What's the government's position about whether a tribal court order of protection can deprive an individual of the exercise of his second amendment rights for the remainder of his life? Well, Your Honor, I think the tribal court has the authority to issue the protection order. Right, no doubt, no doubt. And in effect, then that has the residual effect of restricting his gun rights. And in fact, in the tribal code itself, which is in the supplemental excerpts of record, it says that anybody who is under this protection order for the duration of that protection order cannot possess a firearm. We're not worried here, it seems to me, about whether the tribal law is constitutional. We're worried here, if we reach the issue, and I agree it wasn't raised, about whether or not a statute which allows a tribal court order that may or may not be subject to being changed to deprive somebody of the exercise of his second amendment rights in perpetuity. That strikes me as a serious issue. It is a serious issue. But as you had pointed out, this was not raised below, and so this court doesn't even need to get to the merits. I would say that although this protection order was characterized and has been called permanent or indefinite, in the tribal code itself, he did have the opportunity to go and seek modification. Well, that was my question. And so is that portion of the tribal code in the record before us? It is, Your Honor. In the supplemental excerpts. The supplemental excerpts are record number 57, and what it says is duration and modification of the order of protection. And in paragraph two of that section, it says, the court in its discretion may, upon request of either party or the domestic violence offender treatment program, modify an order of protection. So it was open to him to come to the tribal court and say, I'm no longer a danger or I'm moved to Wisconsin or whatever and I want this lifted. That's at least an opportunity that he has and did not take advantage of? That opportunity was available to him. And, in fact, although counsel said he didn't know about it, I would point the court to the fact that he was convicted of violating this order in 2012, and at that time he came to court, admitted that he had been served with this order, actually was assigned counsel, was given a copy of this order, which said that it was not only permanent in nature, but also that he had been served personally with it, and he never raised any of those issues. He never, even after that, sought modification of it. I was looking in the record for where he conceded that he had been served, and I didn't see that. You're talking about served with the original notice of the hearing? Well, Your Honor, I think there's some ambiguity about that. Yeah. I read that as him saying he knew he was served to show up at the hearing where he was going to get sanctions. And that's the point. What he said is that there were two times where he made this statement. He made it or made a statement about it. It was during the, I believe it was September 2012 hearing where he went to the and it was, excuse me, June 12th of 2000, June 29th of 2012 when he showed up to quash a bench warrant, and it was during that hearing he indicated that he, about nine or ten years earlier, he had been served. But he, and he asked for a copy of the protection order. That came up again during. Tell me where that is in the record so that we're reading the same thing. Yeah. What I'm looking at is the bench warrant quash, and that's Supplemental Experts of Record 331, and that's just the order. I'd have to refer to my brief to find out. Okay. You still want to look at the same document. I've got it. Yeah. And then as far as a statement that he made during his post-arrest, he indicated that he had been served. He didn't say with what, but he said he had been served. He decided to stay away. So focus on the first thing that you were saying. Where does it say in SER 331 or 332 that he was, that he admits he was served with the original order of protection? It doesn't say it in that, on that order. There was a tape that was of that recording that we made part of the record,  Okay. But it was during that colloquy with the court where he indicates that he had been served about eight or nine years ago and then asked for a copy of the protection order. So I think when you look at, although it is, it's not crystal clear, there could be a reasonable inference that he had actually been served with the actual protection order. I'd also say that there's some circumstantial evidence about that, and it's really because when he was in this violation of the protection order proceedings after assigned counsel, as I said, indicated he received a copy of that order, and on the order itself, it's more clearly personally served. He never raised that issue. In his, even in his plea, noble contemporary plea, although he didn't affirmatively say I was served, he acknowledged that he was being charged and was entering a plea for violation of an order of protection entered by the tribal court that was still valid at the time that it was entered in 2002. And so in order for it to have been valid under even the tribal code, he had to have been personally served. But he wouldn't have known that the personal service issue could affect his constitutional right to bear arms at that point. I mean, he wouldn't have the same sort of incentive to challenge that. Well, I guess I would disagree, because in the tribal code itself, and remember he was, he had counsel during this hearing, it explicitly says that a person who is subject of a protection order cannot possess a firearm. I would agree with you that in the judgment or even during the sentencing, he was not advised of that explicitly. But he did have counsel. He, I would assume that that would have been something that at least potentially could have been discussed. I mean, I don't know if it was or not. So, and even if, I would also say, too, that beginning in 2007, he purchased a firearm, and then after this violation, he continued to purchase firearms. He certainly was advised then. When he filled out the ATF form 4473, it's question 11H. It says, are you the subject of a court order restraining you from harassing, stalking, or threatening your child or intimate partner or child of that intimate partner? And then in the acknowledgment section, which he signed on numerous occasions, it says, I understand a person who answers yes to any question 11B through 11K is prohibited from purchasing or receiving a firearm. So he bought guns after 2012, after that hearing. Is that correct? That's correct. In fact, he started buying guns two months after that hearing. And he continued to buy guns even though he was called back into court for violating, well, not for violations, but for failing to pay the modest fine that they imposed on him. Let me ask a question about your last point. Let's assume, just for purposes of discussion, that the evidence was clear that he wasn't served with the original protective order. Is it your view that nonetheless, since the one existed and he knew about it, that the answer to 11B subjects him to criminal penalties? Well, I suppose that's a fine point to draw on it. No, I don't know if it's a fine point. The argument on the other side is there's not sufficient evidence that I was ever served. You're saying, well, but he knew by 2012 that he had a protective order, and he checked off this box. And so my question is, assuming that to be true, assuming he was never served but knew by 2012 that there was a protective order and nonetheless answered incorrectly, would that be sufficient to subject him to criminal penalties? That wasn't my understanding of the statutory scheme. So what you're asking is if he had not been served. Yeah. You're the one who brought up the 2012 thing and said, well, by 2012, he knew he had a protective order, and he checked off 11B. So my question is, is that fact, are those two facts by themselves sufficient to establish criminal liability? I would think that. Not the way the statute reads, is it? It's not the way the statute reads. Because the statute reads that you have to have actual notice. Right. I mean, and so. So in a case where one did not have actual notice, the mere fact that he was later aware of a protective order would not subject him to criminal liability, correct? It would not. Okay. But it's relevant to his entrapment argument, right? It would be relevant to his entrapment argument. But I, on that point, I would say that, number one, it's an abuse of discretion whether that instruction should have been given. And under these circumstances, because there was evidence that he actually had been served and had actual notice, that, and that he didn't make that fact known to the Federal firearms dealers, that, that. Right. So to put it differently, it seems to me that if we were to conclude that he, that the evidence did not establish notice for whatever reason, then these convictions would have to be set aside, wouldn't they? If you were to conclude that? Yes. You're pushing me to say yes? I'd like to say no. Well, I'm pushing you to say yes because it seems to me that's what the statute says. Well, that's what the statute says. I understand you don't think there's any way in the world we can conclude that. That's not my question. My question is, that's an essential element of your proof. It is an essential element of our proof. Okay. Is that a better way to put it for you? Yeah. If we can't prove that, yes, then we're out of luck here as far as the conviction is concerned. I would say, though, that when you look at the circumstances of the service of that – well, when you look at the evidence of service, there's strong evidence that he was served. The circumstances surrounding it, the fact that we did have this return that was filed with the court, and the fact that he showed up in court with counsel, was given a protection order, and never raised it. I think that's strong circumstantial evidence that, in fact, he was, and combining in the reasonable inferences from the statements that he made. Could I ask you, just getting away from those points about the motion for change of venue? Yes. Well, when you read skilling, it seems to say we should just defer to the district court. But when I look at the actual factors that they raise, not all of them weigh in favor of the district court here. So the district court addressed the size and characteristics of the community and the large size of Western District of Washington, and that the news was not blatantly prejudicial, at least by skilling standards. But when I look at the lapse of time, there were just a few months between the shooting incident and Mr. Freyberg's trial, and the Supreme Court in skilling also looked at whether the government had won on all of its issues, which, of course, the government did here, had not done so in skilling. So how do we weigh the skilling factors, since at least some number of them would weigh in favor of Mr. Freyberg's argument that it was an abuse of discretion not to change the venue? Well, Your Honor, I think that you have to – first of all, I would say that it's the defendant's burden to show that there was a need for a change of venue. But the other thing that I think what's most compelling here is the voir dire itself. There were 51 jurors that were summoned. We questioned – they were given questionnaires, and we questioned 22 of them. Nine were excused for cause for a variety of reasons, not all of which was because we read the accounts in the media and we got our mind made up and nothing, including our duty to follow the law, is going to change that. Not all of them said that. There were some that said that they simply couldn't be fair. I would point out that three jurors did make it on the panel, but all three of those were questioned. They had maybe heard the name. They didn't have intimate knowledge of the details of or connecting Mr. Freiberg to the shooting. And the defense passed for them on cause. They said that they could be fair and impartial. And I think when you look at that, that's the best evidence that there was no prejudice or we had a poison jury pool, if you will. And as far as the skilling factors – So if somebody has a change of venue argument, is it your view that they waive it by then not challenging the seated jurors for cause? No, I don't think they necessarily waive it. But I think we can use the fact that they didn't challenge these jurors for cause to show that they weren't prejudiced by the pretrial – Isn't that just defense counsel saying, I'd like to be someplace else where people don't know about this, but these are the – I'd rather use my peremptories on other people than these three. I just don't take anything from that to show that venue was proper. Well, I guess I would disagree with you. The voir dire is different. Yeah. What I would point out is you said peremptory challenges. We were talking about challenges for cause. And at least the defense passed on those people for cause, meaning that they didn't believe that these – It's not actual prejudice, but Skilling was also looking at presumed prejudice. I agree. But I think that we can look at the voir dire as showing that there wasn't presumed prejudice as well. And to answer your point directly, there are a number of factors that Skilling raises. I don't think Skilling says that you have to give each one of the factors the same weight. You balance those. And while you're right that the period of time in this case was – it was about a year between the incident and when Mr. Freiburg went to trial. And that arguably is not the longest period of time. But what we were able to show to the district court is that over that period of time, the press coverage, while it was very hot when Mr. Freiburg was charged, it kind of waned over time. It would spike at different points, but it had waned over time. And so we think that the passage of time caused this to somewhat fade from the public's eyes for a period of time. In Skilling, I think it was like four years, so it was a much longer period of time, and so that became a greater factor. But I think weighing the other factors, the size of the jury pool, the nature and content of the publicity being primarily factual as opposed to highly prejudicial, I think those weighed very strongly in our favor. And those are what the district court ruled to find that the change of venue was not appropriate. Thank you, counsel. Thank you. Mr. Brown, you used your time, but we'll give you two minutes for rebuttal. Thank you. I appreciate that. Do you want me to do it? I can do that. If it doesn't count on my time, I'll speed this up a little bit. No, it doesn't. Because it is very hard for me to bend over like that, so I appreciate it. Thank you. May I first address a couple of things? First of all, your direct question, Your Honor, about whether it was civil or criminal, when we were talking about that, page 13 of our responsive brief, has the exact terms of the order in question, Exhibit 3 and Exhibit 2, Exhibit 3. Keep in mind, see, I think you do clearly have a good handle on the fact that there are two orders at issue here. There's the original one, come to court, and then there's the second one. And the legal importance is the first order only. And this is what it says, page 13. It's an exact quote in bold letters. Warning to the respondent, Mr. Freiberg, violation of this order with actual notice of its terms is a criminal offense of contempt of court and punishable by prison and or a fine. You are notified that this court shall seek jail time, shall seek jail time, as a remedy for the violation of this court order, and the respondent shall be responsible for the costs of incarceration. And then it goes on to say you can be arrested even if the protected person initiates contact with you, which is kind of boilerplate. So that answers that question. It's definitely a criminal matter. Secondly, and I frustrated myself a little bit, and it's my fault, because I probably should have started off with the whole change of venue issue. Judge Kuhnhauer, in his own wisdom, great wisdom, moved the Racine trial to Los Angeles because he knew Mr. Racine was not going to get a fair trial here. My question is perhaps a theoretical question, and that is what harm would have been done? We end up with jurors where how do you, as a trial lawyer, I tried over 300 cases, say to a potential juror, ma'am, you live in Marysville, yes. Your children go to Marysville Pilchuck High School, yes. Children were killed there by my client's son. Is that going to affect you? Do I ask that question? Do I not ask that question? That would not even be an issue if this case had been tried in Los Angeles or San Francisco. Then you get to the whole venue issue, and one of the things the courts, the Ninth Circuit particularly, has been really good about, well, appropriate, I think, about is looking at the actions of the U.S. attorneys in establishing the publicity surrounding the case. Page 7 of my responsive brief has the exact press release from the prosecuting attorneys in this case. Headline, bold headline, and this is what, why the news media is here. Do you think the news media is here today or at the trial because of him not filling out an order correctly? No. This is the exact press release, in caps, FATHER OF MARYSVILLE SCHOOL SHOOTER CHARGED WITH ILLEGAL FIREARMS POSSESSION. MURDER WEAPON ILLEGALLY PURCHASED IN VIOLATION OF PROTECTION ORDER. I'm reading, still reading. Yes, counsel, and you've exceeded your time, so if you could wrap up in a sentence or two, that would be appreciated. Sure. You said I don't need to read this. We've read the papers. I will sum up by saying that that press release unnecessarily mentions all kinds of things about this case. This case is about whether a person was properly served with notice and had an opportunity to go to a hearing and whether he was actually served by his brother-in-law. That was what the case was about. And it's apparently you clearly have an understanding that there's two orders at issue here. Mr. Miyake, because he's an honest guy and a very good prosecutor, did indicate the audio that is now part of the record that you're talking about. Clearly, Mr. Freiburg is referring to the second order, not the first order, which is the basis of the prosecution in this case, but the second order, which was the protection order. Thank you, counsel. You have exceeded your time, and we understand your arguments, I believe. So the case just argued is submitted. Well, I want to thank you for being prepared, so that's great. I mean, I'm used to being interrupted. It's fine. We appreciate the arguments of both counsel in this very interesting matter. It is a very interesting case, and it was nice to see all of you. Thank you. Thank you. Our final case on this morning's docket is Hewson v. Key.
judges: Graber, Ikuta, Hurwitz